UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------x

ANN BURTON,

                                   Plaintiff,

         -against-

WHITE GLOVE PLACEMENT, INC.,

                                   Defendant.

--------------------------------------------------------x

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★  JUL 31 2012  ★

BROOKLYN OFFICE

**MEMORANDUM AND ORDER**

11-CV-4072 (SLT) (LB)

**TOWNES, United States District Judge:**

Plaintiff Ann Burton brings this *pro se* employment discrimination action against her former employer, defendant White Glove Placement, Inc. ("White Glove") and four "Doe" defendants who are alleged to be "recruiters" for White Glove. Plaintiff's complaint principally alleges that defendants discriminated and retaliated against plaintiff by terminating her employment and by disseminating medical laboratory reports concerning plaintiff which plaintiff had provided to White Glove in confidence. White Glove and two "Doe" defendants (collectively, "Defendants") now move to dismiss this action, principally arguing that plaintiff did not timely exhaust her administrative remedies. For the reasons set forth below, Defendants' motion is granted and this action is dismissed.

### BACKGROUND

The following facts are drawn from plaintiff's complaint dated August 2, 2011 (the "Complaint"), the allegations of which are assumed to be true for purposes of this Memorandum and Order. As of August 2011, Plaintiff was a 57-year-old black woman, licensed by the State of New York to work as either a Licensed Practical Nurse ("LPN") or a Registered Nurse ("RN") (Complaint at 3). Until sometime in March 2010, she was employed by both the Department of Veteran's Affairs (the "DVA") and White Glove (*id.* at 5).

At some point during her tenure at the DVA, Plaintiff began to complain about employment discrimination. Although the Complaint is unclear, it suggests that plaintiff may have "engag[ed] in protective [*sic*] activity" against the DVA prior to January 27, 2009 (*id*.). However, the Complaint unambiguously alleges that Plaintiff engaged in protected activity on February 2, 2010, when "she filed an EEOC Complaint . . . against the DVA" (*id*. at 6).

On February 2, 2010, or sometime prior thereto, defendants "illegally shared" a "medical lab report" relating to plaintiff with the DVA (*id*.). The Complaint does not disclose the nature of the report, but implies that she provided the report to White Glove and/or its physician with the expectation that it would be kept confidential (*id*.). The Complaint also suggests that the DVA further disseminated the report by faxing it to the Silvercrest Center for Nursing and Rehabilitation ("SCNR"), another of Plaintiff's former employers (*id*. at 5).

On March 19, 2010, DVA terminated Plaintiff's employment (*id*.). Shortly thereafter, White Glove stopped providing Plaintiff with any work assignments (*id*.). Although White Glove informed Plaintiff that no assignments were available (*id*. at 6), plaintiff was aware White Glove was giving assignments to one Janet Gilkes Williams – another black woman who, like plaintiff, was both an LPN and RN but who, unlike plaintiff, was then less than 40 years old (*id*. at 4-5).

### *The Prior Action*

On April 1, 2011, plaintiff filed a *pro se* action in this Court – *Burton v. White Glove Placement, Inc.*, No. 11-CV-1649 (SLT)(LB) (the "Prior Action") – against White Glove and Faigy Friedman, an individual affiliated with White Glove, principally alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964. Noting that "Title VII claims can only be brought against the plaintiff's employer" and that "[e]ven 'individual

defendants with supervisory control over a plaintiff may not be held personally liable under Title VII,'" this Court, acting *sua sponte*, dismissed the Title VII claims against defendant Friedman. *See Burton v. White Glove Placement, Inc.*, No. 11-CV-1649 (SLT)(LB), slip op. at 5-6 (E.D.N.Y. Apr. 27, 2011).  However, the Court granted plaintiff leave to amend her Title VII claim against White Glove (1) to clarify when White Glove employed plaintiff, (2) to demonstrate that she had exhausted her administrative remedies by filing a charge of discrimination against White Glove or to explain why she failed to do so, (3) to clarify whether she intended to allege Title VII retaliation and, if so, (4) to allege some facts to support her claim of a "retaliatory conspiracy" among her former employers and White Glove.

In early May 2011, plaintiff filed an amended complaint which clarified that plaintiff was employed with White Glove from October 2004 through March 2010.  The Amended Complaint acknowledged that plaintiff had not filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") until May 5, 2011, Amended Complaint at 6, but requested "a waiver in exhausting administrative remedies" on the grounds that the EEOC "initially refused to forward an application" and that "the EEOC process is seriously flawed by faulty intake and compliance with time constraints" (*id.* at 6-7).  The Amended Complaint did not suggest a Title VII retaliation claim or allege any facts from which the Court could construe such a claim.

By Memorandum and Order dated June 17, 2011, the Court dismissed the Prior Action for failure to exhaust administrative remedies. *See Burton v. White Glove Placement, Inc.*, No. 11-CV-1649 (SLT)(LB), slip op. at 3-4 (E.D.N.Y. June 17, 2011).  Since the Amended Complaint alleged age discrimination, albeit without specifically alleging a cause of action under the Age Discrimination in Employment Act of 1967 (the "ADEA"), this Court noted that any ADEA claims would be dismissed on the same basis (*id.* at 4).  However, the Memorandum and

3

Order expressly advised plaintiff that the action was being dismissed "without prejudice to refiling within 90 days after plaintiff's receipt the right-to-sue notice" (*id.* at 3).

### *The Instant Action*

On August 10, 2011, plaintiff commenced this action against White Glove, Friedman, and four "Doe" defendants – including "Lisa Doe" and "Simi Doe," who are alleged to be "recruiter[s]" at White Glove. The Complaint in this action states that the EEOC issued a right-to-sue letter to Plaintiff on July 15, 2011, and alleges that the defendants "violated plaintiff's rights guaranteed under the U.S. Constitution, Title VII of the Civil Rights Act of 1964, ADA and ADEA in that the defendants discriminated against plaintiff on the basis of plaintiff's race, color, national origin, disability, age, exercise of rights, and reprisal" (Complaint at 3, 4). In connection with the claims under the Americans with Disabilities Act (the "ADA"), the Complaint alleges that plaintiff is "disabled" (*id.* at 3), but makes no allegations concerning the nature of that disability.

The Complaint does not allege a factual basis for the Title VII and ADA claims. Indeed, the pleading alleges that defendants "hired other LPN's [*sic*] . . . and RN[s], Americans, immigrants, races, colors, ages, and disabled nurses" at the same time they denied plaintiff any assignments (*id.* at 4). Furthermore, the only facts alleged in support of plaintiff's ADEA claim is that, on some unspecified occasion, defendants afforded employment opportunities to Janet Gilkes Williams while denying those same opportunities to plaintiff (*id.* at 4-5).

In contrast, the Complaint specifically alleges that defendants retaliated against Plaintiff for complaining about discrimination by the DVA. The Complaint alleges that White Glove retaliated against Plaintiff for engaging in this allegedly protected activity by (1) divulging plaintiff's confidential medical records and (2) terminating plaintiff's employment. However,

4

the Complaint is unclear with respect to when the medical records were disclosed. The Complaint first alleges that "defendants exchanged plaintiff's medical laboratory report with the DVA and later with Silvercrest Center for Nursing and Rehabilitation" in early 2009, stating that the "DVA faxed lab report on 2/6/09" (*id.* at 5). However, the complaint subsequently alleges that defendants "illegally shared plaintiff[']s medical lab report . . . with the DVA" "when she filed [her] EEOC Complaint on February 2, 2010, against the DVA" (*id.* at 6).

With respect to plaintiff's termination, the Complaint states that the defendants "retaliated against plaintiff . . . when the defendants last scheduled plaintiff for an assignment on or about March 21, 2010" – two days after plaintiff was terminated by the DVA (*id.* at 5). Thereafter, defendants informed plaintiff that there were no assignments available and declined even to send her out on jobs requiring only an LPN, saying that she could not work as an LPN because she was an RN (*id.* at 6). The Complaint does not allege exactly when plaintiff realized that she had been terminated, but attaches a "Request for Employment and Wage Data" form, sent by the New York State Department of Labor to White Glove, which indicates that Plaintiff filed an unemployment insurance claim with the State on May 24, 2010.

***Procedural History***

Although the body of the Complaint named Friedman and the four "Does" as defendants, Magistrate Judge Lois Bloom did not direct service on these individuals. Rather, Judge Bloom construed the Complaint as naming White Glove as "the defendant" and stated in a footnote:

> Although not mentioned in the caption, plaintiff names five individuals employed by White Glove, Faigy Friedman (named and dismissed in *Burton v. White Glove Placement, Inc.*, 11-CV-1649 (SLT)(LB)) and four "Doe" defendants in the text of her complaint. Plaintiff is reminded that Title VII does not provide for individual liability, *Tomka v. Seiler Corp.*, 66 F. 3d 1295, 1313 (2d Cir.

5

> 1995), and therefore the individual defendants she has named are
> not proper defendants in this action.

*Burton v. White Glove Placement, Inc.*, No. 11-CV-4072 (SLT)(LB), slip op. at 1, n. 1 (E.D.N.Y.

Aug. 30, 2011).  In a Memorandum and Order dated November 4, 2011, this Court found that

Judge Bloom was correct in noting that the employment discrimination claims against Friedman

had been dismissed with prejudice in the Prior Action.  *See Burton v. White Glove Placement*

*Inc.*, No. 11-CV-4072 (SLT)(LB), slip op. at 4 (E.D.N.Y. Nov. 4, 2011).  In addition, the Court

determined that the Complaint did not identify the Doe defendants with the particularity

necessary to enable the Marshals to serve them.  The Court directed White Glove's counsel to

advise this Court if it 1) was able to identify one or more of the Doe defendants based on the

allegations in the Complaint, 2) was authorized to represent those individuals and to waive

service on their behalf, and 3) wished to appear on their behalf in this action (*id.* at 5).  The Court

also authorized White Glove's counsel to move to dismiss this action on behalf of White Glove

and other parties for which it had filed a Notice of Appearance or otherwise appeared (*id.*).

White Glove now moves to dismiss this action on behalf of itself and those Doe

defendants which it has been able to identify: Lisa Rubin (sued as "Lisa Doe") and Simi Stein

(sued as "Simi Doe").  The motion to dismiss advances three arguments: (1) that plaintiff did not

timely exhaust her administrative remedies, (2) that the employment discrimination statutes at

issue do not provide for individual liability, and (3) that plaintiff's complaint fails to state a

claim.  The first of these arguments, and plaintiff's response to it, is described in greater detail in

the discussion below.

6

## *DISCUSSION*

The Complaint principally alleges that "the defendants discriminated against plaintiff on the basis of plaintiff's race, color, national origin, disability [and] age" in violation of Title VII, the ADA, and the ADEA. Complaint at 4. Before bringing suit under any of these statutes, however, a plaintiff must first exhaust his or her administrative remedies by timely filing of a charge of discrimination with the EEOC or an equivalent state or city agency. 42 U.S.C. § 2000e-5(e); 42 U.S.C. § 12117(a); 29 U.S.C. § 626(d)(2). This exhaustion requirement serves "to give the administrative agency the opportunity to investigate, mediate, and take remedial action," and "enable[s] the EEOC to provide the alleged wrongdoer with notice and to permit possible conciliation." *Fleming v. Verizon New York. Inc.*, 419 F. Supp. 2d 455, 462 (S.D.N.Y. 2005) (citations omitted).

The time period for filing the charge of discrimination varies, depending on whether the individual files his charge directly with the EEOC or with a state or local agency. In New York, which has both state and local fair employment agencies, an individual who initially files a grievance with the state or local agency must file a charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred," or within 30 days after receiving notice that the state or local agency has terminated the proceeding, whichever is earlier. *See* 42 U.S.C. § 2000e-5(e)(1). If a charge is filed solely with the EEOC, it must be filed within 180 days after the alleged unlawful employment practice occurred. *Id.* These time periods begin to run from the date when the employee received notice of the discriminatory action. *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir.1996).

The first argument raised by defendants in their motion to dismiss is that plaintiff failed to file a charge of discrimination within 300 days of her "termination" by White Glove. Relying

7

on that portion of the Complaint which states that plaintiff was employed by White Glove from

October 2004 through March 2010, defendants argue that plaintiff would have had to file her

charge of discrimination by January 25, 2011, even if she worked until the last day of March

2010. *See* Defendants' Memorandum of Law in Support of their Motion to Dismiss Plaintiff's

Complaint ("Defendants' Memo") at 5. Since this Court has already established that plaintiff did

not file the charge of discrimination until May 5, 2011, *see Burton v. White Glove Placement,*

*Inc.*, No. 11-CV-1649 (SLT)(LB), slip op. at 2 (E.D.N.Y. June 17, 2011), Defendants argue that

plaintiff failed to file a timely charge of discrimination.

      In response to this argument, plaintiff implies that Defendants are engaging in a

continuing violation of the employment discrimination statutes. Plaintiff argues that "[t]he

discriminatory act occurred *after* [the] last date of [plaintiff's] employment," but continues to the

present. Letter to Nicole Saldana, Esq., from Ann Burton, dated Dec. 12, 2011 ("Plaintiff's

Response"), at ¶1 (emphasis in original). Plaintiff's Response implies that each day in which

plaintiff is not offered an assignment gives rise to a new claim, stating that "the complaint is not

only timely, but also [plaintiff] has grounds for additional complaints." *Id.*

      The Complaint, however, does not suggest a basis for asserting a continuing violation.

"In order to assert a continuing violation, a plaintiff must establish both (1) a policy or practice

which caused the alleged discrimination, and (2) that the timely claim is continuous in time with

the untimely claims." *Plumey v. New York State*, 389 F. Supp. 2d 491, 498 (S.D.N.Y. 2005)

(citing *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998)). With respect to the

first element, "[t]he law is clear that the continuing violation exception applies only where there

are 'specific' or 'identifiable' discriminatory customs or practices, or specific and related acts

that are tantamount to such customs or policies." *Weeks v. New York State (Div. of Parole)*, 273

F.3d 76, 82-83 (2d Cir. 2001). A complaint which alleges only "discrete discriminatory acts" is insufficient to invoke the continuing violations doctrine, and such acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

In this case, the Complaint does not allege a discriminatory policy or practice. Rather, it alleges discrete acts of discrimination or retaliation. The Complaint primarily alleges that Defendants discriminated and retaliated against plaintiff by terminating her employment. In addition, the Complaint alleges that defendants retaliated against plaintiff by revealing confidential laboratory reports to the DVA and/or the SCNR. "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Morgan*, 536 U.S. at 114. To sue for these discriminatory and retaliatory acts, therefore, plaintiff would have had to file a charge of discrimination relating to these acts within 300 days of their occurrence.

There remains a question as to precisely when the discriminatory and retaliatory acts alleged in the Complaint occurred. The Complaint expressly alleges that "the defendants last scheduled plaintiff for an assignment on or about March 21, 2010," Complaint at 5, but Plaintiff's Response states that the last day of plaintiff's employment was March 7, 2010, and that "the discriminatory act began on or about March 8, 2010." Plaintiff's Response at 1. Similarly, the Complaint first implies that defendants provided plaintiff's laboratory reports to the DVA and/or the SCNR sometime in 2009, Complaint at 5, then alleges that defendants "illegally shared plaintiff[']s medical lab report with the DVA" "when she filed [her] EEOC Complaint on February 2, 2010, against the DVA." *Id.* at 6.

9

For purposes of this Memorandum and Order, however, it is unnecessary to resolve these internal conflicts in plaintiff's versions of events. First, with respect to plaintiff's termination, it is not necessary to determine the exact date on which plaintiff last worked for White Glove in order to determine the timeliness of her charges of discrimination relating to her termination. As noted above, the 300-day period does not begin on the last day of work, but on the date when the employee received notice of the discriminatory action. *See Van Zant*, 80 F.3d at 713.

While it may not be possible to determine when plaintiff first realized that she had been terminated, the Request for Employment and Wage Data form attached to the Complaint states that plaintiff filed a claim for New York State unemployment benefits on May 24, 2010. Plaintiff could not have applied for unemployment benefits unless she was aware that her employment had been terminated. *See Vallimont v. Eastman Kodak Co.*, 198 F.3d 235, 1999 WL 752956, at *1 (2d Cir. Sept. 17, 1999) (summary order). Accordingly, plaintiff must have received actual or constructive notice of her termination by that date. Since plaintiff did not file a charge of discrimination until almost a year thereafter, plaintiff's discrimination and retaliation claims based on that termination must be dismissed for failure to file a timely charge of discrimination.

Similarly, there is no need to determine the exact date on which defendants divulged plaintiff's confidential medical laboratory report. Regardless of whether defendants divulged the report in 2009 or February 2010, this dissemination occurred more than one year before plaintiff filed her charge of discrimination. Accordingly, plaintiff's retaliation claim relating to the medical laboratory report is dismissed for failure to file a timely charge of discrimination.

Since this Court finds that plaintiff's Title VII, ADA and ADEA claims must be dismissed for failure to file a timely charge of discrimination, this Court need not address

defendants' remaining two arguments.  In addition, because plaintiff's complaint does not allege any cognizable claims under the United States Constitution or any other federal statutes, this action is dismissed.

### CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss this employment discrimination action is granted.  Since the Complaint does not allege any other federal claims and since no Doe defendants other than Lisa Rubin and Simi Stein have been identified or served, this action is dismissed with prejudice.  The Clerk of Court shall enter judgment in favor of defendants White Glove Placement, Inc., Lisa Rubin and Simi Stein and, upon entry of judgment, shall close this case.

**SO ORDERED**.

SANDRA L. TOWNES
United States District Judge

Dated: July _30_ , 2012
       Brooklyn, New York

11